(34 South. 110.)

No. 14,683.

McMICHAEL v. ILLINOIS CENT. R. CO.

(March 30, 1903.)

CARRIERS—INJURY TO PASSENGER—EVIDENCE—CONTRIBUTORY NEGLIGENCE.

1. Plaintiff sued for damages caused by her falling from the upper steps of one of defendant's trains while she was alighting, in the nighttime, from the train.

The preponderance of the testimony shows that the car was in motion. She was warned not to alight, and still persisted, although she was told of the danger.

It is evident that she was nervous at the time, and acted with impulsiveness; and the court, with the facts shown, did not find it possible to allow damages.

2. A lady passenger takes risks who attempts to alight in the nighttime, with a parcel in her hand, when the car is in motion.

3. Physical facts of the nature of those pleaded by plaintiff, shown in part by testimony, will not, under the rules of evidence, outweigh the testimony of a number of witnesses to the contrary of. the theory based upon these physical facts.

(Syllabus by the Court.)

Appeal from Judicial District Court, Parish of Tangipahoa; Robert R. Reid, Judge.

Action by Ella McMichael against the Illinois Central Railroad Company. Judgment for plaintiff. Defendant appeals. Reversed.

Hunter C. Leake and Bolivar E. Kemp, for appellant. Milton Alexander Strickland and William H. McClendon, for appellee.

## Statement of the Case.

BREAUX, J. Plaintiff, owing to personal injuries received in a fall, while leaving defendant's train at Amite City, sued for damages in the sum of $2,500.

The questions are of fact, and render it necessary to carefully read the testimony of each witness, and to weigh and compare all the incidents attending the fall.

Plaintiff avers, in substance, that she was a passenger of the Illinois Central Railroad Company from New Orleans to Amite, due at Amite at 9:30 p. m.; that before arriving at Amite City she requested the porter to assist her in alighting from the train on its arrival at Amite City; that on approaching the depot the porter came, in accordance with her request, took her baggage, and walked toward the platform, plaintiff following; that before she could descend the car steps she was, by a sudden forward movement or jerk, violently thrown to the ground, and thereby she became unconscious, and remained in a condition of unconsciousness until the afternoon of the following day. Her head was severely cut and injured, the cut leaving a permanent scar. Her arm was badly torn and bruised. She was confined to her room, and required the services of a physician for a week. She suffered bodily pain and mental anguish.

As well here state that there is no dispute regarding the personal injuries sustained. They were as alleged by plaintiff.

The defense sets up negligence, careless-

ness, and inattention, and alleges that she alone was at fault for the fall.

Plaintiff is a graduate of a female college; has been teaching for 20 years; is an intelligent witness in her own behalf. She has traveled on railroads, and has some knowledge of their movements. She swears that she had a heavily packed valise, one pasteboard box about a foot square, and two small curtain poles about one inch in diameter and about five feet in length; and that she told the porter to see that her baggage was taken off, which he did. That she took up the two curtain poles. The train stopped. She went to the door, turned to go down the steps (she was facing the east coming down the steps), and at that moment the train pulled up or jerked, and she was thrown down, and rendered unconscious, as before stated. She was wounded on the left side, and holes were cut through the left sleeve of her dress. She thought that the train was not in motion when she stepped from the door to the platform just prior to alighting. She did not step on the platform, but walked down the steps, and she was just in the act of stepping from the platform to the first step, recalling the incidents as well as she could. She had not reached the bottom step. The train moved—jerked—and she fell.

Plaintiff says that she well knew the danger of alighting from a moving train, and that she did not attempt to alight while the train was in motion. The witness positively says, "The train was not moving when I left the coach and passed to the platform." Witness also states that she occupied, while in the train, the third or fourth seat from the north end of the east side.

A witness for plaintiff (Tate) testified that he picked up plaintiff's pocketbook and gloves near where she fell. It seemed to this witness that some one had placed the box and valise of plaintiff near the place where she fell, one near the other; not as they would have been had they fallen down at the place. He noticed "some rods or something lying on the top of the valise."

The pasteboard box was untied at the time of the accident, it was found untied as plaintiff swore it was, and none of its contents were missing. Plaintiff also swore that she had her pocketbook in her hand, and her gloves, on leaving the car.

We infer from the testimony of this witnes that plaintiff fell some distance before the train arrived at the stopping place.

The contradiction between the testimony for defendant and that for plaintiff is irreconcilably conflicting. We can only say that some one is woefully mistaken. All the witnesses for the defendant substantially agree in stating that the car was in motion at the time.

G. W. Andrews, of Summit, Miss., a passenger, in answer to preliminary questions propounded, said that he follows a trade, and that his family consisted of six children; that, although the lady was a stranger to him, he was moved to suggest to her, because of the danger, not to go out on the platform; that there would be plenty of time to get off when the train would stop; that he placed his hand on the door, near which he was sitting, in front, to keep her from going out; that, as she insisted upon passing, he withdrew his hand from the door; that the train made only one stop; that she carried a few parcels in her hands; that there was no unusual jerk of the train; that no porter was assisting in carrying her parcels; and that there was nothing done by the trainmen to lead a person to believe that it was the proper time to leave the coach; and that he saw no occasion for this passenger to leave the coach.

A Mr. H. T. Waterer, of Lexington, Miss., a farmer, and who occasionally ships cattle, was another passenger. He corroborates this statement in every particular, mentioning that he and Mr. Weiner, an attorney at law, who has had 18 years' experience as a practitioner at law (he is local counsel of defendant's road), of Durant, Miss., were sitting near at the time, and heard the witness say: "Don't you go out. You are liable to get hurt. You have plenty of time to get off;" that the train was in motion, and that it made only one stop; noticed no jolt, jerk, or lurch of the train.

Mr. Weiner, above referred to, testified that he was a passenger on the night in question, and the car which he and the lady who is the plaintiff occupied was very much crowded; that she seemed to move with difficulty, owing to the parcels she carried; that his intention was to assist her, as he realized the danger to which she was exposing herself in stepping on the platform while the car was in motion. He does not know that she noticed him. To quote from the testimony, "But her act was such as to deter me from making any further move;" that she "appeared to be rather impatient or nervous"; that Mr. Waterer, near him, exclaimed, "Why, she is all right; she has already gotten off;" and that the train was still in motion when he made the remark. He did not see any porter about at the time, and that no train hand left the coach in advance of the plaintiff. He observed no jerk of the train. "I knew that the train was moving too fast for passengers with baggage to go out on the platform." In answer, on cross-examination, he said that he was actuated at the time by a feeling which is always interpreted as one which elevates humanity. He said, "A man hardly knows what his motives are at the time of an accident of this kind."

Mr. S. E. Willis, of Clinton, Miss., who swore that he was a minister of the gospel, occupied at the time in teaching, said:

"As we were pulling into the town of Amite City, the porter announced our arrival to the place, and immediately a lady got up and walked to the door of the coach. There she hesitated for a moment. I don't know just how long. Then she opened the door, and stepped out on the platform, pulling the door to behind her. At the same time the train was moving pretty rapidly. I saw no more of her, for it was dark out there. The lady had something in her hands. One thing appeared to be a roll about three or four feet long, and parcels."

He did not "know just how long it was before the train made a full stop; surely it was not less than fifteen or twenty seconds."

Dr. A. E. Davenport, a practicing physician at Tishomingo, Ind. T., who was a passenger on the train, testified:

"Yes, my attention was directed to a lady who had been sitting behind me as she passed by me in going to the front door of the car. She brushed by me, in her effort to get to the front, in a very hasty manner, carrying a number of parcels; among others, a long pole, which I think was a window pole. Some time before I reached the station house at Amite City, La., she appeared to be very

impatient to go out upon the platform of the car. As she placed her hand on the knob, a gentleman stepped between her and the door. As to what he said to her, I do not know. He seemed to be protesting with her about something, but I did not understand its purport; but, after he had spoken to her as detailed, she seemed not to heed him, but apparently paid no attention to him, and pushed by him, and walked out, while the train was still in motion."

This was about two minutes, the witness estimated, before the train came to a full stop. In his opinion, there was nothing to indicate that it was the proper time to leave the coach; and that after the stop some one came to him and said that a lady passenger had been hurt, caused, the passenger stated, "by her jumping off the train before it had stopped. This was immediately after the train had stopped. In a few minutes several persons passed my car, carrying a lady, who seemed to be injured physically."

The conductor and the engineer testify that the train was in motion at the place the plaintiff fell.

We will state here, as pertinent to the issue, that plaintiff said on her cross-examination as a witness that she did not stop after leaving her seat, "only to turn and tell some friends, who were sitting on the west side of the car, one seat back of me, good-bye. Back of my seat, I mean. These friends reside in or near Magnolia, Miss." Their testimony was not taken.

The lady has a youthful face and white hair, to which we refer only to state that witnesses for defendant, who were not acquainted with her, refer to this as rendering it easily possible for them to say that it was plaintiff to whom they refer in their testimony, as this fact attracted their attention at the time.

The question of distance enters into the decision. The train consisted of 11 cars going north—a mail coach, express, baggage, and day coaches. Plaintiff, defendant contends, was in the second day coach. In the fall she must have been about 305 feet from the front or north end of the train. She was found about 11 feet south of the second day coach, or 76 feet from its front.

The cars are 65 feet in length, except the express, which is 60 feet. The length of the engine is 50 feet; total, 500.

The engineer testified that he stopped his engine 165 or 175 feet north of the depot, 6 or 7 feet south of Mulberry street. The depot at Amite City is located between Mulberry street on the north and Oak street on the south, and the distance between them is 400 feet.

Plaintiff, her counsel states, was found lying on the gravel walk 12 feet north and 150 feet south of the depot.

Plaintiff complains of the fact that the flagman of the road was not produced as a witness in this trial, in order to have testimony to throw light on the question of distances, in regard to which other witnesses have testified.

The judge of the district court rendered judgment for plaintiff for $500. From this judgment defendant appeals.

## Opinion.

Under any theory it is evident that plaintiff left the train in which she was a passenger before it had arrived at the place at which it stopped the last time, if it stopped twice.

Plaintiff's counsel's insistence is that the train stopped with the baggage car opposite the depot, and again when the conductor alighted and walked to where the plaintiff was immediately after the fall.

This view is not borne out by the testimony, although such a stop would harmonize with the physical facts, and is, perhaps, the only way to account for them (on plaintiff's theory) with any degree of certainty.

The physical facts, as set forth by plaintiff and the testimony of defendant, do not agree.

It is a trite saying "that actions speak louder than words." At the same time, they do not, because not reconcilable, from a reasonable point of view, with testimony, always outweigh the testimony. The physical facts do not demonstrate that the evidence is untrue.

The decided preponderance of the testimony is that the train was in motion, and it was dangerous to alight at the time. If the testimony of six disinterested witnesses, not in the employ of the company (contradicted only by plaintiff) be true, then we are forced to

the conclusion that plaintiff must have been careless. The law is well settled that a passenger, particularly a lady passenger, who has parcels with her, should not seek to alight while the train is still running. The physical facts do not establish conclusively that the cars were not running. All the witnesses except plaintiff testified that the car was running at a rate too fast to alight without incurring some risk of an accident.

After all, it is more reasonable to conclude that in some way unknown to any one the parcels, unopened, and in order, were on the ground near where plaintiff fell, than to conclude that all the witnesses except plaintiff have disregarded the truth in order to prevent this lady from receiving an amount for injuries sustained.

The physical fact before referred to is not independent of all human agency. It may be that the parcels were laid on the ground by another than the porter, or even by the lady passenger herself.

She, in the excitement of the moment, may have been more imprudent than she imagined, but may have held on to her parcels with more tenacity than she thinks.

Another embarrassing feature about this case is the fact that the district judge before whom the case was tried rendered a judgment for plaintiff. We entertain great respect for his judgment. It is with hesitation that we differ from him on this occasion.

He did not hear all the testimony. There were witnesses examined under commission. By this we are, as to those, on the same plane as he was. Taken as a whole, we leave the case convinced that the train was in motion, and that it was imprudent to alight before it had stopped.

We have carefully weighed all the testimony, and give due credit to all the witnesses—those for plaintiff as well as those for defendant—for desiring to testify truthfully. We find that the weight of proof is with defendants. It only remains for us to set aside the judgment.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is avoided, annulled, and reversed. It is further ordered, adjudged, and decreed that plaintiff's demand be rejected, and her suit is dismissed, at her costs in both courts.