BREAUX, C. J.
Dr. H. G. Morris, a physician, sued the defendant company to recover the sum of $9,395.50.
The facts are: Late in the evening of March 18, 1909, he boarded a through train of the defendant company at McComb City to return to his home in Kentwood, La. He had a patient in Kentwood upon whom he desired to call at earliest possible moment.
He requested, and those in charge of defendant’s train granted his request, to be permitted to stop at Kentwood, although the train was not scheduled to stop at that place.
Travel on the regular passenger train would not have served his purpose; that is, of coming to Kentwood early enough to timely call on his patient.
*448 The flagman on this through train had never previous to this trip served on a regular passenger train.
The doctor arrived at Kentwood about 9 o’clock p. m. He had paid his fare upon entering the car at McComb City. He took a seat in the car and fell' asleep.
He was awakened by the flagman of the train shortly before reaching his destination and about the time the train was whistling for the station Kentwood.
The plaintiff in his own behalf said that the flagman told him to get off there, meaning Kentwood; that the flagman left him, and where he went he (plaintiff) did not know. He next saw the flagman bending toward him in the coach at the door with a lantern on his arm and looking at him.
Plaintiff arose from his seat and walked toward the flagman. He passed him in the door and was of the impression at the time that the train had stopped at the station at Kentwood, and that he (the trainman) at that particular moment was standing in the rear of the car with the lantern still in his hand; that he walked out, stepped on the ground, fell over, and was badly hurt. Part of his foot was amputated. His arm was also badly bruised and hurt.
R. 'H. Hayes, the flagman, says: That at Kentwood, after calling out the station, he opened the door. That Dr. Morris came out with him and walked down the steps, and that he walked down with him. He does not remember whether he (the flagman) was on the top step, but says that Dr. Morris was on the step just below him. That just before the train came to a stop Dr. Morris stepped off before he could prevent him, fell on the walk when he stepped off, and rolled down between the curbing and the track. That he (Morris) knew the train was moving.
One of plaintiff’s ankles was weak. Tears ago he met with an accident. His ankle was injured. He had not since recovered the full strength of that ankle.
The flagman, Hayes, although this was his first trip as a flagman, swore that he knew the duties of a passenger flagman. He stood an examination on the rules of the company. He had been in its employ a number of years.
Defendant’s counsel suggest in argument that, doubtless, plaintiff felt under obligation to the local railroad authorities, particularly to one of their agents through whose kind offices he had obtained the very legitimate favor of taking the fast through train and of, stopping at Kentwood to call as early as possible on a patient awaiting the doctor’s visit; that he wished to make the stop as speedily as possible, and in doing this was himself hasty and imprudent. f
There is evidence to sustain that theory.
The train was still in motion. Plaintiff testified that it was in motion, but that he was not aware of it at the time.
The question arises: Did it not devolve upon him to satisfy himself before alighting that the train was standing ready to thermit passengers to alight?
If a passenger, who has every reasonable opportunity to assure himself that the train is at full stop, falls to make inquiry, he cannot hold others liable for damages in case he alights while it is in motion and is hurt.
There were lights at the depot; near the depot there were visible objects, although it was in the night, whereby it was possible to satisfy, himself that the train was still moving; besides, the motion of the car is of itself a warning that the train is still moving and has not come to a full stop.
Plaintiff’s position is that there was negligence on the part of the flagman, who should have warned him of the danger and should have notified him not to attempt to alight.
Unquestionably, that would have been a very proper act on the part of the flagman.
The question is whether the company is liable for the failure of its flagman to thus notify and warn the plaintiff.
*450 That is not the trend of the decisions. In a well-considered case, it was decided:
“That there is an implied contract — the passenger assents to the company’s rules and regulations for leaving their cars, and, if injury befall him by reason of his disregard of the regulations necessary for conducting the business, the company is not liable even though the negligence of the servants concurred with his own negligence in causing the mischief.” Penn. R. R. v. Zebe, 33 Pa. 318.
We do not go that far. We do not hold that the flagman was negligent. If we were to arrive at that conclusion, we would decide that plaintiff is entitled to damages.
The flagman had seen plaintiff pass him. He was standing behind him on the steps. He, the testimony states, had no reason to infer that plaintiff would seek to alight at that particular time.
It happens (it is within common knowledge) that passengers frequently step down to that step while on their way to alight without attempting to step off before the ear has stopped.
We are not led to infer from the testimony that the flagman had invited the passenger to step off.
It is true, as before stated, that at about the time the whistle sounded for Kentwood he announced that the next stop was at that placer There is not in this announcement an invitation to alight before the train has stopped.
The following is from the text of Thompson on Negligence':
“Ordinarily, a railway carrier of passengers is under no duty to assist adult passengers who are in apparent good health and possession of their faculties to ,get on and off its vehicles or to find seats for them; but its duty is limited to giving them a reasonable time and opportunity to do so without assistance, and this is especially true where there are no special sources of danger.”
We do not give entire approval to the utterances of the text-writers, based, it is said, on numerous decisions, for the employes should always exercise ordinary care to prevent accident; but this, in our opinion, does not involve the necessity of seeking to control the action of those who will jump off without sufficient regard to their own safety.
Statement While Suffering.
Ordinarily, if one, while suffering excruciating pains, is called upon to answer by an importunate defendant or other person equally as persistent and rude, and the wounded person makes statements to the detriment of his right, courts will not give them effect.
Plaintiff, a considerable time after the accident, after he had had days of reflection, said, in substance, that he was not cautious enough, or that he alone was to blame.
We would not attach importance to the statement if it did not agree with our view of the case.
Plaintiff swore that the claim agent of the defendant company promised to pay the expenses of his illness.
Taking the testimony of the plaintiff and of the agent, we do not find it possible to render a judgment allowing the amount. As witnesses, the plaintiff and the agent flatly contradict each other; one affirms, and the other denies.
It follows, under well-settled jurisprudence, that the claim is not proven.
We are constrained to affirm the judgment.
Eor reasons stated, the judgment is affirmed.