(74 South. 534)

No. 20760.

GUIDRY v. MORGAN'S LOUISIANA & T. R. & S. S. CO.

(Jan. 15, 1917. Rehearing Denied March 12, 1917.)

*(Syllabus by the Court.)*

1. CARRIERS ⟶303(4)—SETTING DOWN PASSENGERS—LIABILITY.

It is the duty of the employés of a railroad company in charge of its train to stop the train long enough at a station to allow passengers to get off safely. If a neglect of that duty results in injury to a passenger, the railroad company is responsible in damages.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1228, 1229.]

2. CARRIERS ⟶338—PERSONAL INJURY—CONTRIBUTORY NEGLIGENCE.

Where the negligence of the employés of a railroad company causes such excitement to a passenger as to force him or her to an immediate selection of one or another situation of danger, the passenger will not be held guilty of contributory negligence for suddenly taking the most dangerous course.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1352.]

3. CARRIERS ⟶333(7)—SETTING DOWN PASSENGERS—CONTRIBUTORY NEGLIGENCE.

A woman passenger on a railroad train, whose station was announced by a member of the train crew, went with her child to the platform of the car while the train was slowing down. The train stopped only a few seconds, at a dark, desolate station, late in the night. No member of the train crew offered to assist the woman or saw her leave the train. The child stepped off without being injured, but before the woman could step down the train started and she fell and was injured. *Held* that, if it be assumed that the woman had not made her last or irretrievable step when the train started, her jumping from the train immediately after it had started, under the circumstances of necessity and excitement brought on by the negligence of the employés of the defendant company, was not contributory negligence on her part.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1393.]

*(Additional Syllabus by Editorial Staff.)*

4. DAMAGES ⟶132(6)—EXCESSIVE DAMAGES—PERSONAL INJURY.

A verdict of $5,000 awarded a woman passenger 32 years of age, one of whose legs was badly and permanently flexed or bent at the knee and ankle, and whose kneecap was broken, and who before the accident was of sound physique was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 377.]

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Thomas M. Milling, Judge.

Action by Mrs. Amelia Tyler Guidry against the Morgan's Louisiana & Texas Railroad & Steamship Company. Judgment for plaintiff, and defendant appeals, and

plaintiff prays that judgment be increased from $5,000 to $10,000. Affirmed.

Caffery, Quintero & Brumby, of Franklin, for appellant. A. C. Allen, Percy Saint, and Emmet Alpha, all of Franklin, for appellee.

O'NIELL, J. The plaintiff sued for $10,000 damages for personal injuries which she alleges she sustained by being thrown from the step of the defendant's railroad car, on which she was a passenger. The jury rendered a verdict in her favor for $5,000. Judgment was rendered accordingly, and the defendant has appealed. In answer to the appeal, the plaintiff prays that the judgment be increased to $10,000.

The plaintiff purchased at Adeline station an excursion ticket for transportation to and from New Orleans. On the return trip, her 13 year old daughter accompanied her. The conductor did not demand railroad fare for the child, and it was not paid.

When the train approached Adeline station, at 1:40 a. m., a member of the train crew entered the car in which the plaintiff was seated and called the name of the station. As the train slowed down the plaintiff and her daughter arose, and a gentleman who had been in conversation with her carried her valise to the platform. They were all on the platform before the train stopped. The station, in a somewhat desolate place, was closed, and there were no lights there or in the neighborhood. The plaintiff and her daughter were the only passengers going to Adeline. There was no one at or near the station, and no member of the train crew approached or offered to assist them. The moment the train stopped, the child stepped off, but before the plaintiff could alight, the train started, and she was thrown to the ground and severely injured.

It is admitted that the train stopped only a few seconds. The members of the train crew, as witnesses for the defendant, testified that the stop lasted five to seven seconds. The plaintiff and her daughter testified that the stop was not longer than two seconds. One of the passengers testified that the stop was no longer than a second; that he felt the jar of the train stopping and instantly it pulled out. The gentleman who carried the plaintiff's valise to the platform testified that the train did not come to a full stop; but the defendant's counsel admit that he is mistaken in that; that the train did stop for a few seconds.

The members of the train crew, as witnesses for the plaintiff, testified that none of them saw the plaintiff or her child get off of the train, notwithstanding the conductor admitted that, when the train approached Adeline, he remembered that he had a lady passenger for that station and knew what coach she was in.

The members of the train crew testified that when the train stopped at Adeline, they got down on the ground on the side towards the station, the conductor standing near the front end of the train, the porter near the center, and the brakeman near the rear end, during the few seconds the train was stopped. As they were on the side of the train from which the plaintiff and her daughter got off, and as the conductor knew they were to get off at that station, we cannot understand why no member of the train crew took care to see that they had got off safely before the train pulled out.

When the child got off, she tripped on an umbrella which she was carrying and fell, but was not injured. The plaintiff, who was on the platform of the car behind the child, then attempted to alight, but the train immediately started, and she fell, four or five feet from where the child had fallen.

The defense to this suit is that the few seconds the train stopped gave the plaintiff ample time to get off safely, and that she was negligent in not getting off sooner than

she did. In support of that contention, the defendant relies upon the testimony of the passenger who carried the plaintiff's valise to the platform. He testified that he and the plaintiff and her child went to the platform of the car while the train was slowing down for the station. In fact, it is proven conclusively, and is not disputed, that the plaintiff and her daughter lost no time in going to the platform of the car as soon as the station was called and before the train had stopped. Therefore, when the train stopped (and defendant admits that it did stop), the plaintiff and her daughter and the gentleman carrying their valise were already on the platform of the car, ready to step off. The child was on the lower step, and got down immediately after the train stopped. The passenger who carried their valise testified that he was standing behind the child and in front of the plaintiff, and stepped aside to permit her to descend the steps of the train. He admits that his being in her way delayed her getting off the train a few seconds. His failure to observe that the train had stopped when the child got off is, perhaps, due to the fact that it was very dark and he was not on the steps but on the platform of the car, engaged in a conversation with the plaintiff, when the train stopped. At any rate, it is evident, from his statement that he moved aside to permit her to pass down the steps of the car, that he did not consider it dangerous or imprudent for her to get off. He testified, and it is admitted by the defendant, that the train did not stop after the plaintiff got off, but increased its speed and continued on to the next station. Hence the only theory on which we could conclude that the plaintiff deliberately stepped off of the train while it was in motion would be that the train did not stop at all. Six of the seven witnesses who testified on that subject swore that the train did stop for a few seconds, and the defendant's counsel admit that it stopped. As the plaintiff's daughter was on the step of the car and the plaintiff was standing behind her on the platform before and at the moment the train stopped, and as they got off as soon as they could possibly do so after the train stopped, it follows that the only reason why the plaintiff did not get off safely is that the train did not stop long enough to allow her to get off safely.

[1-3] The defendant's counsel contend that, even if the employés in charge of the train were negligent in not allowing the plaintiff sufficient time to get off safely, she was guilty of contributory negligence in stepping off after the train had started, and that her negligence was the proximate cause of her being injured. That argument is founded upon the supposition, which is not borne out by the evidence, that the plaintiff had not made her last or irretrievable step when the train started, and that she might have remained on the step of the car and been carried beyond her station if she had used calm and deliberate judgment and prudence. But that argument also loses sight of the fact that the circumstances were such that the plaintiff could not deliberate or use her best judgment. She was getting off of the train at the implied invitation of those in charge of it, and had a right to believe that she would be given ample time to get off safely. Her child had got off the train at a dark, desolate way station, at 1:40 in the morning. If the plaintiff was not already in the act of stepping to the ground when the car started— if it was yet possible for her to remain on the step of the car when it started—it would have been very unnatural for her to remain there and incur the risk that her child might be injured by attempting to get back on the train. The fact that the plaintiff fell only four or five feet from where the child had got off shows that she did not lose any time in getting off after the child got off.

The defendant's plea of contributory neg-

ligence, under its most favorable theory of the facts of this case, is answered by the doctrine announced in the case of Lehman v. Louisiana Western R. R. Co., 37 La. Ann. 705, cited with approval in Holzab v. N. O. & Cr. Co., 38 La. Ann. 190, 58 Am. Rep. 177, in Odom v. St. Louis Southwestern R. R. Co., 45 La. Ann. 1204, 14 South. 734, 23 L. R. A. 152, in Brashear v. Houston Central A. & N. R. Co., 47 La. Ann. 738, 17 South. 260, 28 L. R. A. 811, 49 Am. St. Rep. 382, and in Chretien v. N. O. Ry. Co., 113 La. 766, 37 South. 716, 104 Am. St. Rep. 519, viz.:

"It is the clear duty of a railway carrier to provide safe egress from their cars for their passengers, to give due notice of arrival at stations, to allow passengers proper and sufficient time to alight, and to take care not to start the train while passengers are in the act of getting off. For neglect of such duties, resulting in injury to passengers, the carrier is responsible."

In Odom v. St. Louis Southwestern R. R. Co., 45 La. Ann. 1201, 14 South. 734, 23 L. R. A. 152, in which the case above quoted was cited with approval, the doctrine was stated thus:

"A passenger on a railroad train, when it stops at the station where he is to get off, and where he attempts to do so and is on the steps of the car, and the train moves ahead when he is in this situation, he is compelled to adopt a perilous alternative, to run the risk of being thrown from the train when its speed is accelerated, or to leave the train with less speed. In trying to escape imminent danger brought about by defendant's negligence, he is not guilty of contributory negligence, and the defendant corporation is responsible for its negligence."

In another case, in which both of the decisions quoted above were cited with approval (Brashear v. Houston Cent., A. & N. R. R. Co., 47 La. Ann. 735, 17 South. 260, 28 L. R. A. 811, 49 Am. St. Rep. 382), a case like this was distinguished from the cases cited by the defendant's counsel, and the doctrine was stated thus:

"This case is distinguished from those in which it is held that the passenger on a railroad, carried beyond his station, cannot recover damages caused by jumping from a moving train. * * *
"The passenger on a railroad train, with a ticket for a station at which it is customary for the train not to stop, but to slow its movement, so as to allow passengers to alight, will be entitled to damages if, called to the platform by the announcement of the station, he is thrown from the steps of the car and injured, his fall being caused by the sudden increase of the speed of the train, when it should have been slowed or stopped."

See, also, Reynolds v. T. & P. Ry. Co., 37 La. Ann. 698; Le Blanc v. Sweet, 107 La. 368, 31 South. 766, 90 Am. St. Rep. 303; Sharp v. New Orleans City R. Co., 111 La. 396, 35 South. 614, 100 Am. St. Rep. 488; 6 Cyc. 611–613; Wharton's Law of Negligence (2d Ed.) p. 324, § 378, citing Toledo R. R. v. Baddeley, 54 Ill. 19, 5 Am. Rep. 71, and Penn. R. R. Co. v. Kilgore, 32 Pa. 292, 72 Am. Dec. 787. See, also, Buswell on Personal Injuries, p. 213, § 121. See, also, Wood's Ry. Law, vol. 2, p. 1126, § 305, on "Duty as to Stopping of Trains for Passengers to Alight," citing Filer v. N. Y. C. R. R. Co., 49 N. Y. 47, 10 Am. Rep. 327, and Loyd v. Hannibal R. R. Co., 53 Mo. 509; I. C. R. R. Co. v. Able, 59 Ill. 131.

The defendant relies upon the decisions of this court in Damont v. N. O. & C. R. R. Co., 9 La. Ann. 441, 61 Am. Dec. 214, Walker v. V., S. & P. R. R. Co., 41 La. Ann. 795, 6 South. 916, 7 L. R. A. 111, 17 Am. St. Rep. 417, McMichael v. I. C. R. R. Co., 110 La. 18, 34 South. 110, and Morris v. I. C. R. R. Co., 127 La. 445, 53 South. 698, 31 L. R. A. (N. S.) 629. Our opinion is that the decisions referred to are not at all appropriate to the facts of this case.

In Damont v. N. O. & C. R. R. Co., 9 La. Ann. 441, 61 Am. Dec. 214, the passenger voluntarily jumped from the train that had failed to stop at the station where she had intended to get off; and it was held that she could not recover damages for the injury she sustained, because "the leap [was not] made to avoid an imminent impending peril, produced by the misconduct of defendants, but to avoid being carried beyond her destination."

In Walker v. V., S. & P. R. R. Co., 41 La. Ann. 795, 6 South. 916, 7 L. R. A. 111, 17 Am. St. Rep. 417, also, the plaintiff had jumped from the moving train that had failed to stop at the station at which he had intended to get off. It was held that, although it was the duty of the railroad company to stop its train at the station to which it had contracted to carry the passenger and to land him there safely, the fact that the company neglected that duty by failing to stop did not justify the passenger in jumping from the moving train, because he was not invited to get off the train, expressly or impliedly, by any employé of the company, and because the plaintiff's jumping from the moving train was voluntary and was not influenced or excused by an impending danger or by necessity of any kind.

In McMichael v. I. C. R. R. Co., 110 La. 18, 34 South. 110, the plaintiff's falling from the platform or step of the car was due to her persisting in going upon the platform or step and attempting to alight before the train stopped at the station to which she was going, after she had been warned not to attempt to alight while the train was in motion.

In Morris v. I. C. R. R. Co., 127 La. 445, 53 South. 698, 31 L. R. A. (N. S.) 629, the plaintiff had boarded the train knowing that it was not scheduled to stop at the station to which he was going. At his request, the conductor consented to stop the train, and, while it was slowing down for the station, he stepped off and was injured. It was said, in the course of the opinion, that the only question at issue was whether the railroad company was liable for the failure of the flagman to warn the plaintiff of the danger of attempting to alight before the train had stopped. Quoting a decision of the Supreme Court of Pennsylvania, in Penn. R. R. Co. v. Zebe, 33 Pa. 318, to the effect that there was an implied obligation on the part of the passenger to observe the railroad company's rules and regulations for leaving the cars, and that, if injury befell him by reason of his disregard of the regulations necessary for conducting the business, the company was not liable, even though the negligence of its servants concurred with that of the passenger in causing the injury, this court said it would not go that far; that, if the court concluded that the flagman was negligent in failing to warn the passenger of the danger of attempting to alight before the train stopped, the plaintiff would be entitled to damages. It is not necessary, in the case before us, to hold that it was the duty of any member of the train crew to warn the passenger of the danger of attempting to alight before the train stopped. The defendant, in this case, does not pretend that the plaintiff attempted to alight before the train stopped. On the contrary, the contention is that she did not get off soon enough. Our conclusion is that she got off as quickly as she could possibly have done so under the circumstances, and that the defendant was at fault for failing to allow her sufficient time to get down safely.

In one of the cases cited (Lehman v. Louisiana Western R. R. Co., 37 La. Ann. 707) it was observed that the train had stopped a minute or a minute and a half, that is 15 times, or perhaps 40 times, as long as the train stopped in this instance; and it was held in the case cited:

"The stoppage was excessively brief. No diligence was used to learn whether passengers were in the act of getting off. Had there been, it would have been seen that the plaintiff and his party were on the platform and steps of the car for that purpose at the moment that the train was started. They had not been guilty of any unusual or unreasonable dilatoriness in getting off. They had a right to suppose that the train would not start until they were safely landed."

A number of bills of exception were reserved by the defendant's counsel to certain portions of the judge's charge to the jury and

to the judge's refusal to give certain special charges requested by the defendant's counsel. It is contended that, on these bills of exception, the verdict and judgment appealed from should be set aside and the case remanded for a new trial. Having jurisdiction of the facts as well as the law, and having authority either to amend the judgment or to set it aside and render such judgment as may be deemed proper, in a civil case decided by a jury, this court will not grant a new trial on account of an error in the charge of the judge, if the verdict rendered is in accord with the law and the evidence. In this case, however, we have carefully examined the written charge delivered by the judge to the jury and find that it was a complete and correct exposition of the law applicable to the facts disclosed by the evidence.

In a motion for a new trial, the defendant's counsel complained that the judgment should be annulled and set aside and a new trial granted, on the ground that two verdicts were rendered. It appears that, after the case was submitted to the jury and they had retired to their room, they returned into court with this as their verdict, signed by the foreman, viz.:

"We, the jury, find the plaintiff, Mrs. Guidry, received her injuries through negligence of train crew, damages to be fixed by judge."

The judge refused to accept that finding as a verdict, and, having again instructed the jury as to the manner of rendering either a special or a general verdict, sent them back to their room for further deliberation. Thereafter they returned with the following general verdict signed by the foreman, viz.:

"Verdict for plaintiff for five thousand ($5,000) dollars."

The defendant's counsel contend that the first finding of the jury was a valid verdict, and that, in effect, it held that the injury to the plaintiff was caused by the negligence of the train crew, and not by the negligence of the defendant, and that judgment should have been rendered on that verdict dismissing the plaintiff's suit. In the alternative, the defendant's counsel contend. that, if the first finding of the jury was a verdict to the effect that the plaintiff's injuries were caused by the negligence of the defendant company, the failure of the jury to fix the amount of the damages was in effect a finding that the plaintiff had not suffered any injury.

We find no merit in either of these contentions. The first verdict—if it was a valid special verdict—that the plaintiff received her injuries through the negligence of the train crew was a finding that the defendant was liable for whatever damages the judge might allow in his judgment. The verdict finally rendered removed all doubt as to the intention of the jury to hold that the defendant was liable in damages to the plaintiff. The defendant's counsel did not object to the judge's refusal to receive the first report of the jury as a special verdict, at the time he sent them back to their room for further deliberation. It was not illegal or improper for the judge to insist that the jury render either a general verdict or a special verdict on which he could base a judgment. When a trial by jury has been allowed in a civil case, neither party to the suit has a right to require that the jury shall render a special verdict, or to deprive the jury of the right to render a general verdict. C. P. 520.

[4] On account of her extraordinary weight, 220 pounds, the plaintiff was severely injured by her fall. One leg is badly and permanently flexed or bent at the knee and at the ankle, and the kneecap is dislocated and perhaps broken. She is very lame. The surgeon in charge of the defendant's sanitarium, testifying in behalf of the defendant, admitted that the plaintiff has less than one-twentieth, perhaps only one-fortieth, of the normal functions or extent of motion of her injured knee, and that her condition can

never improve. She was only 32 years old, and was of sound physique at the time of the accident. She is a widow with two children depending upon her for support, and has no other means of supporting them than her work as a seamstress. Under these circumstances, the amount of the judgment is surely not excessive. In deference to the verdict of the jury, who saw the plaintiff's injuries and were as capable as we are to judge the extent of the damage, we will not increase the amount of the judgment.

The judgment appealed from is affirmed, at the cost of the appellant.

MONROE, C. J., takes no part.