## McCleary, Appellant, *v.* Pittsburg Railways Company.

*Negligence—Damages—Infant—Value of life—Act of April 15, 1851, P. L. 669.*

1. In an action to recover damages for death occasioned by unlawful violence or negligence, the plaintiff is not entitled to recover damages for the mental suffering and anguish caused by the death, but only for the material injury resulting from it.

2. In an action by the parents of a child six years of age to recover damages for its death, the plaintiffs are not to be deprived of damages because they do not undertake to call any witness to prove, by opinion or estimate, or otherwise, the pecuniary value to them of the life which had been lost. If they show what is the occupation of the father, that the parents were in the prime of life, that the child was large for his age, strongly built, in good health, bright and intelligent, they are entitled to have the case submitted to the jury with instructions to take

into consideration the facts shown and to determine from them what was the probable expectancy of life of the child, and then, excluding all considerations of suffering and sorrow, to estimate the pecuniary value to the plaintiffs of the child's life during minority, and thus arrive at the damages which the plaintiffs ought to recover.

Argued April 18, 1911. Appeal, No. 135, April T., 1911, by plaintiffs, from judgment of C. P. Washington Co., May T., 1909, No. 180, on verdict for plaintiffs in case of Manson T. McCleary and Nellie I. McCleary v. Pittsburg Railways Company. Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ. Reversed.

Trespass to recover damages for death of a child six years old. Before TAYLOR, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

If you come to the conclusion, gentlemen of the jury, from all the evidence that the defendant company failed to observe a duty here that they reasonably owed to this child, the street car company, that the company should answer for it in damages, and the only measure of damages that we can submit to you in this case is the expenditure of the money that the father made for the doctor's bill and funeral expenses and the lot and the burying the child. I say that, and I say now if you consider any other element of damage in the case, although it has been argued to you, and although it is sued for, the verdict could not stand, because there is not a scintilla of evidence here in this case of what the pecuniary damages to these plaintiffs would be by reason of this child's death and possible earning capacity. It is a matter proper to sue for in a case like this, but you perhaps heard read in your hearing here during the argument of the case, a decision that holds flatly that one cannot recover along that line for pecuniary services for a minor child to his parents during his minority unless there is some evidence introduced of what it would be. That is a very recent decision delivered by one of the jus-

tices of the Supreme Court of this state, and I cannot recall a syllable or scintilla of evidence in this case bearing on this question, so we must instruct you, if you find that the defendant company was negligent here to confine it to the actual outlay of the father in attempting to save the child's life and in laying the child to rest for all time. Now the reason for that rule is plain. Here are twelve men in this jury with no evidence before them as to what this child might have earned, or his earning ability would be in a pecuniary sense to his parents who are entitled to his wages until he is twenty-one years. A jury of twelve men in different stations and positions in life; one juror might have one idea about it, another juror might have another, and so on clear through until it would all be a guess, you would not now have a single fact, that is of competent evidence, to base a finding on that branch of the case. So that is the instruction we give you, gentlemen, as the case closed on the testimony and as now before you for decision after argument, the only damages you may or ought to consider for these plaintiffs here are on the claim of the father who says he expended $147. That is the proper measure of damages to submit here, because he testifies to that amount he paid out, which would be proper for you to find for him, if you find the defendant company was negligent here, and his claim for money was reasonable and expended or he created a liability for that $147.

Verdict and judgment for plaintiffs for $147. Plaintiffs appealed.

*Error assigned* was portion of the charge quoted above.

*John C. Bane,* with him *L. R. Boyd,* for appellants.— The measure of the plaintiffs' damages here, was the pecuniary value of the service of the child during his minority, together with the funeral expenses and such other necessary expenses as were incurred by reason of the injury: Penna. R. R. Co. v. Zebe, 33 Pa. 318; Caldwell v. Brown,

53 Pa. 453; Haggerty v. Pittston Boro., 17 Pa. Superior Ct. 151; North Penna. R. R. Co. v. Robinson, 44 Pa. 175; Penna R. R. Co. v. Keller, 67 Pa. 300; Stahler v. Ry. Co., 199 Pa. 383.

*John H. Murdoch*, with him *Edgar B. Murdoch*, for appellee.—The measure of damage is simply the money value of the boy's services till he arrives at the age of twenty-one years. Plaintiffs are not to be allowed for agonized feelings of parents nor loss of his society: Penna. R. R. Co. v. Zebe, 33 Pa. 318; Esher v. R. R. & Mining Co., 28 Pa. Superior Ct. 387.

There must be some proof of loss: Peters v. R. R. Co., 225 Pa. 307.

OPINION BY HEAD, J., July 13, 1911:

The verdict of the jury has established that the infant son of the plaintiffs, under six years of age, was killed by the negligent operation of the defendant's car. On the trial the plaintiffs were able to prove that the father had been required to pay funeral expenses, etc., to the amount of $147. They did not undertake to call any witness to prove, by opinion or estimate or otherwise, the pecuniary value to them of the life which had been lost. By reason of this the learned trial court instructed the jury that there was no evidence for their consideration which would warrant them in assessing damages above the sum actually expended by the father. They accordingly rendered a verdict for $147 on which judgment was entered and the plaintiffs appeal.

The Act of April 15, 1851, P. L. 69, as amended by the act of 1855, provides that, "whenever death shall be occasioned by unlawful violence or negligence and no suit for damages be brought by the party during his or her life," certain persons named therein, "may maintain an action for and recover damages for the death thus occasioned." It will be at once observed that the statute is silent as to the intrinsic nature of the "damages" to

be recovered, the measure by which their amount is to be ascertained and the character of the evidence by which that measure is to be established. Judicial construction of the statute along these lines and others at once became a necessity and a long line of decisions followed. It may be sufficient here to cite Penna. R. R. Co. v. Zebe, 33 Pa. 318; North Penna. R. R. Co. v. Robinson, 44 Pa. 175; Penna. R. R. Co. v. Keller, 67 Pa. 300; D., L. & W. R. R. Co. v. Jones, 128 Pa. 308; and Haggerty v. Pittston Boro., 17 Pa. Superior Ct. 151, as particularly relevant to the case in hand.

In spite of the difficulties immediately apparent the statute was found not to be barren of evidence pointing to the legislative intent. The sum to be recovered was denominated by the legislature "damages." The legal significance of that word was as old as the law. Its primary idea is compensation by a wrongdoer for the injury he has inflicted. But if the death of a human being were to be regarded as it affected the minds and hearts of those survivors who had been bound to the lost one by the nearest and dearest of human ties, compensation for the injury was impossible. By a process of unanswerable reasoning then the courts reached the conclusion that in such cases it was only the material injury to the survivors consequent on "the death thus occasioned" that was to be compensated by the "damages" to be recovered. It was therefore held in Penna. R. R. Co. v. Zebe, 33 Pa. 318, that an instruction which left the entire question of damages to the jury, without any direction to exclude from their consideration those consequences of the negligent act above referred to, incapable of compensation, was erroneous. The principle thus declared has been uniformly applied and is now part of the settled law.

Whilst therefore we must start with the proposition that it is the pecuniary value of the lost life that is to be recovered, it is still to be remembered that the right to recover is rooted in the fact that the death has been caused by the negligent act of the defendant. The legis-

lature has declared that "whenever" a death has been "thus occasioned," the proper party "may maintain an action 'for and recover damages." The necessary difficulties in the way of producing direct evidence, by the mouths of witnesses of the exact pecuniary value of a lost life are not destructive of the fundamental right to recover. In several of the cases cited these difficulties were recognized and forcibly stated but were not considered as a bar to the recovery of some damages.

Another step forward was taken when the courts determined that in fixing the pecuniary value, to the survivors, of a life lost through negligence, the jury could not consider whether the previous financial status of those claiming damages, had been impaired or enhanced because of the termination of that life. So it was said in North Penna. R. R. v. Robinson, 44 Pa. 175, "if we are careful to remember that the value of the life lost, to be estimated by a pecuniary standard, is what is to be recovered for, we shall fall into no such error as in supposing that none but those who can show some actual damage, are entitled to recover." Again in Penna. Railroad Co. v. Keller, 67 Pa. 300, it was declared: "life, by law, had a value for the loss of which the survivors had a right to be compensated, in view of its circumstances. . . . None are without value in the eye of the law, and because there are difficulties in the way of determining the question of value, it is not a good reason for denying it altogether."

Now it ought to be fairly manifest that every plaintiff, who begins an action of this character, does not encounter the same difficulties in presenting to a jury such facts as, with the aid of their common intelligence and sound judgment, will enable them to reach a rational estimate of the pecuniary value of the life that has been lost. That life, by the development, acquisition and retention of earning capacity or otherwise, may have assumed a material relation towards the survivors, the money value of which becomes a subject of proof through the ordinary channels of testimony. In such cases, as in all others, the

law requires the production of the best evidence available. But in other cases, of which the present is an illustration, the life lost may have been cut off in infancy or spent itself along the lines of those social, domestic or moral human relations that exhibit no commercial side. In such cases when a plaintiff has proven all of the relevant facts susceptible of affirmative proof, is he to be denied the benefits of the statute because he cannot prove more? We are unable to reach such a conclusion.

In Delaware, L. & W. R. R. Co. v. Jones, 128 Pa. 308, we have a case in which it seems to us the exact point raised by the record before us was disposed of and we therefore quote from it at some length. The action was by the surviving husband to recover damages for the death of his wife. No direct evidence as to the extent of his pecuniary loss was offered by the plaintiff. It was simply shown to the jury that she was a woman about sixty-six years of age and had been and was at the time of the injury a healthy woman. Under these circumstances the defendant's counsel asked the learned trial court to affirm a point that because the evidence of the plaintiff did not show that he suffered any pecuniary loss by the death of his wife, there was nothing in the case to warrant the jury in finding that he did suffer any substantial damages and their verdict should be but for a nominal sum. The learned trial judge refused the point and charged the jury on that subject in the following language: "It is compensation for the pecuniary loss that the plaintiff would be entitled to recover under the testimony in the case. And that is what the value of her services was as the wife of the plaintiff. That is a difficult question to answer, even laying aside all senti- mental considerations. You are to take into consideration her age, her condition in life so far as it has been shown by the testimony, her health, the probabilities as to her living and being able to render services, and measure the dam- ages in that way." In affirming the judgment for the plaintiff, the Supreme Court, by Mr. Justice Sterrett, used the following language: "Evidence was introduced

by plaintiff below to prove that the deceased, Mrs. Jones, was his wife, that she was sixty-six years of age, and had always been a healthy woman, etc.   Presuming that in the absence of any rebutting evidence, the jury might and doubtless would infer that she was an ordinarily industrious and useful wife, capable of discharging properly the duties of her position, and that consequently her death was a pecuniary loss to him, plaintiff below did not undertake to prove that she possessed any specially or exceptionally good qualities, as with propriety he might have done if the subject of his loss had been a horse or other animal.   Nor was it either necessary or proper that he should do so.   The court was clearly right in refusing to charge as requested."

Upon the trial of the present case the jury had before them as witnesses both the father and mother of the deceased child; they had evidence of the nature of the occupation of the father and thus of his general social condition; they had the ages of each parent, showing that they were in the prime of life; they had the fact that the child was large for his age, a strongly built boy, in good health, bright and intelligent.   Beyond these matters, shown by the direct evidence, the jury had the right to apply to them the results of the observation and experience which are the common inheritance of intelligent men.   By the application of such knowledge to the facts in evidence, the jury, under our system, was first to determine the liability of the defendant by ascertaining whether or not the conduct of its servants was that of men of ordinary prudence and care.   If they could thus establish the fact of liability, there seems no good reason why they should not also be permitted to fix the extent of that liability within the limitations which the courts have declared were intended by the legislature in the enactment of the statute.

It is but fair to the learned trial judge to say that he felt himself constrained to adopt the views he expressed to the jury by reason of his interpretation of the very late

utterance of the Supreme Court in the case of Peters v. Bessemer R. R. Co., 225 Pa. 307. It may first of all be observed that the court, in that case, could hardly have intended to modify, much less to reverse the long line of cases to which we have referred because no one of them is mentioned in the report of the case either as cited by counsel or referred to by the court. The action there was by a mother for the death of her son about seventeen years of age who was employed by the defendant as a brakeman at the wages of $70.00 per month. The defendant asked the court to affirm the following point: "The burden was upon the plaintiff to show what the net earnings of her son would probably be during minority. She has not shown what the cost or probable cost of his board, clothing and maintenance during minority would be, and there is no evidence upon which the jury can base a calculation of his net earnings. They cannot be permitted to guess at the probable cost of his board, clothing and maintenance, and the verdict therefore should be for the defendant." The learned trial judge refused the point and added some instructions as to the manner in which the jury should view that question. In reversing a judgment for the plaintiff, Mr. Justice Brown, speaking for the court, said: "Though the defendant's eleventh point could not have been affirmed as a whole, complaint is justly made that the jury were permitted to guess at the probable cost of boarding and clothing the deceased during his minority. The instructions were that they would have to find this item from the evidence and could not guess at it, but there was not a particle of evidence as to what the probable cost of the son's maintenance would be. The jury therefore simply did guess. This must not be permitted on the new trial, for some proof of the probable cost of maintenance during minority is indispensable in an action like this for damages by the parent."

We may here note that the judgment was reversed with a venire. Had the mere failure of the plaintiff to affirm-

atively prove the precise amount of pecuniary loss she suffered been legally sufficient to defeat her action, there would have been no occasion for a venire. She undertook to prove affirmatively that the life of her deceased son had assumed towards her a relation with a tangible, commercial aspect to the end that the pecuniary value of that life might be based on his earnings which she had shown to be at the rate of $70.00 per month. But under the circumstances this, without more, was not a fair basis, because she was not entitled to have her compensation measured by the gross earnings of the deceased. From that sum there must first be deducted the cost of his boarding, clothing, etc., whilst earning them. There was no legal difficulty in the way of her making affirmative proof of the approximate cost of such boarding, clothing, etc., for a young man seventeen years of age living in the community and under the conditions in which he lived, and the court simply held that under such circumstances it was her duty to make such proof.

We are of opinion that case was not intended to be controlling of the question presented by this record. In our judgment the case should have been submitted to the jury with instructions to take into consideration the facts in evidence, already noted, and to determine from them what was the probable expectancy of life of the deceased child, and then, excluding all considerations of the character to which we have previously adverted, to estimate the pecuniary value to the plaintiffs of that life during minority and thus arrive at the damages which the plaintiffs ought to recover. Of course we do not mean to express any opinion as to the value of the defense which was made before and may be made again on the new trial. As to that feature of the case, there is not now at least any complaint as to the manner in which it was submitted to the jury.

Judgment reversed and a venire facias de novo awarded.