# Hammaker, Appellant, *v.* Watts Township.

*Negligence—Death of minor child—Damages—Measure of damages—New trial.*

More than nominal damages are recoverable for the death of a child, where the verdict of a jury establishes the culpable negligence of the defendant, and that such negligence was the proximate cause of the child's death. The law regards human life as having pecuniary value to those injured by its untimely ending, through the negligence of others, and is not too exacting in measuring the standard of such value. Where there is evidence of the child's age, good health, bright mental condition, etc., before the jury a verdict awarding nominal damages only to its parents should not be sustained.

*Negligence—Damages—Inadequate verdict—New trial.*

Where the evidence establishes the negligence of the defendant, and that such negligence was the proximate cause of a child's death, and there is ample evidence before the jury of her good health, bright mental condition, etc., a verdict fixing the pecuniary value of the child's life at the amount expended for its burial, is so unreasonable and disproportionate to the value of human life, that it raises an inference that it must have been influenced by partiality, or prejudice, or some misconception of the law or the evidence. In such case it is the duty of the trial judge, in the exercise of his judicial discretion, to award a new trial, and failure to do so constitutes reversible error.

Argued March 11, 1919. Appeal, No. 21, March T., 1919, by plaintiffs, from judgment of C. P. Perry Co., August T., 1914, No. 8, on verdict for plaintiffs in case of

554, (1919).]    Statement of Facts—Arguments.

Albert J. Hammaker and Ava M. Hammaker v. Town-
ship of Watts.  Before ORLADY, P. J., PORTER, TREXLER,
WILLIAMS and KELLER, JJ.  Reversed.

Trespass for damages for the death of a minor child.
Before SEIBERT, P. J.

The facts are stated in the opinion of the Superior
Court.

Verdict for plaintiffs for $27, and judgment thereon.
Plaintiffs appealed.

*Error assigned,* among others, was refusal to grant a
new trial.

*William H. Sponsler,* for appellants.—The plaintiff on
the evidence were entitled to substantial or reasonable,
and not nominal, damages: Pennsylvania R. R. Co. v.
Bantom, 54 Pa. 495; 8 A. & E. Enc. of L. 922; 33 Cyc.
1560; Spencer v. Stockdale Borough, 57 Pa. Superior
Ct. 622; Bradwell v. Ry. Co., 139 Pa. 404.

It was not necessary for plaintiffs to show actual loss
to establish a claim for substantial damages: North
Pennsylvania Railroad Company v. Robinson, 44 Pa.
175; Pennsylvania R. R. v. Keller, 67 Pa. 300; Railroad
Company v. Barron, 72 U. S. 90; Delaware, etc., R. Co.
v. Jones, 128 Pa. 308; McCleary v. Pittsburgh Rys. Co.,
47 Pa. Superior Ct. 366; Penna. R. R. Co. v. McCloskey,
23 Pa. 528; Hoon v. Traction Co., 204 Pa. 371; Woeck-
ner v. Motor Co., 182 Pa. 186; Cosgrove v. Hay, 54 Pa.
Superior Ct. 180.

*James M. Barnett,* and with him *John C. Motter,* for
appellee, cited: Spencer v. Stockdale, 57 Pa. Superior
Ct. 622; Kardon v. Forst, 70 Pa. Superior Ct. 566;
Schnatz v. P. & R. R. Co., 160 Pa. 607; Lochran v.
Thomas Bros. Co., 65 Pa. Superior Ct. 302; Palmer v.
Leader Publishing Company, 7 Pa. Superior Ct. 598;
Chestnut v. Autocar Co., 53 Pa. Superior Ct. 2; Mc-

Cleary v. Pittsburgh Rys. Co., 47 Pa. Superior Ct. 366; Hoon v. Beaver Traction Co., 204 Pa. 369; McCleary v. Pittsburgh Rys. Co., 47 Pa. Superior Ct. 370.

OPINION BY KELLER, J., April 21, 1919:

The plaintiffs, Albert J. Hammaker and Ava M. Hammaker, his wife, brought this action against the Township of Watts, to recover damages for the death of their nine-year-old daughter, Emma, who was killed in an accident alleged to have been caused by the failure of the defendant to maintain one of its public roads in reasonably safe condition for public travel and properly protected by a guard rail. In the same accident, a seven-year-old daughter, Elda, was also killed, and a separate action was brought to recover the damages suffered by reason of her death. Both actions were tried together, and a verdict was rendered in each case for $27, the cost of the child's burial. The facts as they appear from the evidence and as established by the verdict are as follows:

The plaintiff, Albert J. Hammaker, was, on January 29, 1914, a day laborer, aged thirty-eight years, living in Watts Township, with his wife, who was a few years younger than himself, and three children, a boy twelve years old and the two little girls above mentioned. The girls were well and healthy, bright and intelligent, smart at school and beginning to be helpful at home, assisting their mother, who did her own work, in her household duties. About ten o'clock on the morning of that day, Mrs. Hammaker had occasion to go to her mother's, who lived about two miles distant. She took her two daughters with her, intending to leave them with a friend who lived along the way. When she got to her friend's house, she found that she was not at home, so she decided to send them to her sister's, who lived half a mile distant. She went with the girls along the road as far as the top of the hill and started them on the way to her sister's, telling them to come home by two or three o'clock. The children, on arriving at their aunt's, found that she was

sending her two children, Ellsworth and Evelyn, on an errand to a neighbor's, and asked to go along. On the way back, they overtook, or were overtaken by, an oil tank wagon of the Atlantic Refining Company, driven by one, Cook, and followed it on foot until they got to Lowe's store, where, after a short delay, the driver invited them all to ride on the wagon with him. Evelyn and Elda sat on the seat with him and Emma and Ellsworth stood directly in front of them. The road on which they were traveling, for at least a part of the way, has a high bank on the right-hand side, as they were going, and a steep declivity on the left side, unguarded by any rail or barrier. The road at this point, for a distance of at least ninety feet, is very narrow, being from nine feet six inches to ten feet ten inches wide, with a fall or incline towards the declivity of from four and a half to ten inches. There was some snow-ice on the road, and, as the rear wheels of the oil wagon came to a breaker in the road, they slipped or skidded in the direction of the declivity, going over the unguarded bank and pulling the rest of the wagon and the horses with them and falling about twenty-five feet against a tree, crushing the driver, Cook, and Emma and Elda to death. Ellsworth jumped in time to save his life, and Evelyn in some miraculous manner also escaped.

The learned trial judge left four questions of fact to be found by the jury: (1) Was the township negligent in not erecting a guard rail at this point? (2) Was the absence of such guard rail the proximate cause of the accident? (3) Was the team under the control of the driver? (4) Were the plaintiffs guilty of contributory negligence "in allowing their children to be at large?" The verdict of the jury in favor of the plaintiffs established these questions of fact against the defendant. The charge of the court on the question of damages was in accordance with the well-established law of this State and is not assigned for error.

When the jury returned their verdict, the following colloquy took place: The Court: "Was it the intention of the jury to find no damages for loss of services for [of] the children?" The Foreman: "Yes." The Court: "Take the verdict. The verdict as stated there is correct and in accord with the statement of the foreman." The Clerk: "Hearken unto your verdict as recorded by the court: You, the jurors, do say you find in favor of the plaintiffs $27 for funeral expenses. Road considered unsafe on account of not being properly guarded. No fault found with the driver." The Court: "The gentlemen will remember, before that is recorded, I inquired of the jury whether they intended to allow any damages to the plaintiffs for loss of services, and they answered they did not. The theory in my mind would be that they regarded the parents guilty of contributory negligence in permitting them to run at large."

The plaintiffs filed a motion for a new trial on the ground of the inadequacy of the verdict; but, before it was acted upon, the president judge of the court, before whom the case was tried, died. His successor, on November 18, 1918, refused the motion and directed judgment to be entered on the verdict, from which judgment this appeal was taken.

That this court has the power to review the discretionary act of the trial court in refusing to grant a new trial because of the inadequacy of the verdict is undoubted: Spence v. Stockdale Borough, 57 Pa. Superior Ct. 622. It is, however, always to be exercised with caution: Woodward v. Traction Co., 17 Pa. Superior Ct. 576; and only when the refusal of a new trial was a manifest abuse of judicial discretion, calling for correction: Reno v. Shallenberger, 8 Pa. Superior Ct. 436; or when there is a clear conviction, compelled by the evidence, that the jury must have been influenced by partiality, passion or prejudice, or by some misconception of the law or the evidence: Palmer v. Publishing Co., 7 Pa. Superior Ct. 594. In Bradwell v. Railway Co., 139 Pa. 404, in the

face of uncontradicted evidence of substantial damages in an action for personal injuries, the jury rendered a verdict for six and one-fourth cents. The court below made a provisional order for a new trial, directing its refusal on payment of $400 to the plaintiff within thirty days, which sum the plaintiff refused to accept. Held error, the Supreme Court saying: "The verdict...... was a mere travesty of justice......He was entitled, as a matter of right, to have the jury pass fairly on the question of damages, and by their verdict award him such sum as, under the evidence, he was entitled to." In Spence v. Stockdale Borough, supra, a suit for damages growing out of personal injury, the plaintiff, under the uncontradicted evidence, was entitled to recover substantial damages, if he was entitled to recover at all. The jury gave a verdict in his favor for six and a quarter cents, and the court below refused a new trial. This court reversed, RICE, P. J., saying in the opinion: "The amount was for the jury's determination; but clearly and beyond all question, a verdict in his favor for six and one-quarter cents was not justified under the implied findings of the jury upon the other questions......The appellate court is reluctant, and for good reasons, to overrule the action of the trial court in refusing a new trial on the ground of inadequacy of damages in such cases as this. See Chestnut v. Auto-Car Co., 53 Pa. Superior Ct. 1. But there are extreme cases where they may and ought to do so, rather than to give countenance to a verdict so absurd as to compel the conclusion that the jury must have been influenced by partiality, passion or prejudice."

The appellee claims that this principle cannot apply in a case for damages for death occasioned by negligence, because in such case the damages, apart from the expenses incident to the injury and death, are more or less conjectural: Hoon v. Beaver Valley Traction Co., 204 Pa. 369.

The acts of this State, authorizing the recovery of damages for death resulting from a wrongful act, are: April 15, 1851, P. L. 669, and April 26, 1855, P. L. 309. Section 19 of the Act of 1851, p. 674, is as follows: "Whenever death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured during his or her life, the widow of any such deceased, or if there be no widow, the personal representatives, may maintain an action for and recover damages for the death thus occasioned." Section 1 of the Act of April 26, 1855: "The persons entitled to recover damages for any injury causing death shall be the husband, widow, children, or parents of the deceased, and no other relative; and the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy, and that without liability to creditors." These acts fixed no measure of damages for such death; but the Supreme Court, following the English decisions, which construed Lord Campbell's Act, 9 & 10 Victoria, chap. 93, on which our acts were apparently modeled, ruled that the measure of damages in case of the death of a minor child is the pecuniary value of his services during his minority, together with the expenses caused by the injury and death: Penna. R. R. Co. v. Zebe, 33 Pa. 318. Mr. Justice THOMPSON said in that case: "And although, from the inherent difficulty in estimating the value of life, when called upon to compensate for its loss, we cannot lay down what may properly be called rules, to guide in making the estimate, yet it is our duty to announce such principles of compensation as we think the legislature intended by the act in question, that there may be some approximation to uniformity of results in such cases."

That the purpose of the rule was to restrain the jury from excessive verdicts in favor of the injured plaintiffs is apparent from an examination of the early cases which construed the acts: Penna. R. R. Co. v. Kelly, 31 Pa. 372. But, nevertheless, the defendant must be "held

to a strict accountability to the extent that a fair interpretation of the statute will allow": Penna. R. R. Co. v. Zebe, supra, p. 330.

While the damages according to the rule are to be only' compensatory, they are also to be reasonable; reasonable no less to the injured plaintiff than to the negligent defendant. In Penna. R. R. Co. v. Bantom, 54 Pa. 495, the plaintiff was a widow, whose son, between thirteen and fourteen years of age, was killed through the negligence of the defendant company. There was evidence that he had assisted the plaintiff in the milk delivery business in which she was engaged. The jury awarded a verdict of $1,748. The defendant appealed, claiming that the recovery should have been limited to damages for nursing and medical attendance. The court, referring to the Act of 1855, said: "Now, here is no limitation of damages to nursing and medical attendance. The legislature did not undertake to define the damages, and yet the power of a widowed mother to recover damages for the injury causing the death of her son is expressly given. What damages? Such as a court and jury, in view of all circumstances, should consider reasonable. If this was not what the legislature meant, their meaning is past finding out."

The law very properly regards human life as having pecuniary value to those injured by its untimely ending through the negligence of others, and is not too exacting in measuring the standard of such value. Thus, in North Penna. Railroad Co. v. Robinson, 44 Pa. 175, a man seventy-five years old was killed through the negligence of the defendant, leaving four children, the plaintiffs, only one of whom lived with, or was dependent on, him. He left an estate of a rental value of $800 per year, which was divided among his children. In answer to the contention that, if but one suffered any pecuniary damage, the defendant was entitled to a verdict, the Supreme Court said: "If we are careful to remember that the value of life lost, to be estimated by a pecuniary

standard, is what is to be recovered for, we shall fall
into no such error as in supposing that none but those
who can show some actual damage are entitled to re-
cover. If such were to be the rule, we should have the
indecent spectacle of an investigation whether the loss
of a parent or child was or was not in fact an advantage
rather than a loss; for certainly, if none be allowed to
recover but such as are able to show a pecuniary loss,
the defendants would, with great apparent reason at
least, be entitled to claim the right to prove the con-
trary, and to show peradventure that, by the death,
the party suing may have succeeded to an estate, or, on
the other hand, had been relieved from the burthen of
maintenance. In case of the death of aged persons or
helpless infants, we might expect in the application of
such a rule to have the point discussed whether the
death was an actual loss or gain. The law means not to
open the door to anything so shocking. It treats the
value of the life lost as a species of property and gives
it, where children sue, to them in the same proportions
as the personal estate of an intestate is distributed."
Hence, in Stahler v. Railway Co., 199 Pa. 383, where the
language above was cited with approval, the defendant
was not permitted to give evidence of the value of the
estate which the plaintiffs had inherited through the
death of their father by the defendant's negligent acts.
The same rule would undoubtedly apply where parents
inherited property from their minor child, killed by the
wrongful act of defendant. And in North Penna. R. R.
Co. v. Kirk, 90 Pa. 15, it was held that it could not be
shown by the defendant on the question of damages that
a father suing for the death of his adult son had been
benefited by reason of having a policy of insurance on
his son's life. A similar ruling was sustained in Coul-
ter v. Pine Township, 164 Pa. 543. In Penna.
R. R. Co. v. Keller, 67 Pa. 300, a mother brought
suit for negligence resulting in the death of her
adult son. While in the army, he had sent her

money, and while he was in the hospital, she had sent him money, and she had received a pension from the government at his death.    The defendant contended that recovery was limited to the actual damage proven. The Supreme Court said: "There is another aspect of it which will result from the principle insisted upon, viz: that the test of the right to recover being the 'pecuniary damages clearly proved to have been suffered,' it will follow that all those who, from youth, old age or other circumstances, are nonproducers, may become the victims of negligence without any compensation to survivors.    Nay, more, the corollary of the postulate would prevent compensation where the survivors are absolutely benefited by the death, either as gainers by a distribution of the property of the deceased, or by the riddance of a troublesome charge.    The controversies which would arise, if this were the rule, would be repugnant and offensive to the sensibilities of every person.    The law expresses no such idea, and we are not to give to it that operation by construction. Compensation for the loss of life was given to certain survivors by the Act of 1855.    The law chose to regard it as property in a certain sense.    It was to be estimated by the same standard as property, viz: its pecuniary value, not to be enhanced by any considerations of pain to the deceased, or anguish to the survivors. Life, by law, had a value for the loss of which the survivors had a right to be compensated, in view of its circumstances.    In estimating it, considerations that personal exertions may ever be required of its possessor, or the possible want of capacity in such possessor, are not to be taken into account.    All stand on a platform common to their positions, and the value of the loss to be compensated is to be estimated with a view thereto. None are without value in the eye of the law, and because there are difficulties in the way of determining the question of value, it is not a good reason for denying

it altogether." See also: Penna. R. R. Co. v. Adams, 55 Pa. 499; Railroad Co. v. Barron, 5 Wallace (U. S.) 90.

In D., L. & W. R. R. Co. v. Jones, 128 Pa. 308, the plaintiff's wife, a woman sixty-six years old, was killed by the defendant's negligence. The defendant submitted a point that, as the evidence of the plaintiff failed to show that he had suffered pecuniary loss by the death of his wife, there was nothing in the case to warrant the jury in finding that he had suffered substantial damages, and that the verdict could not be for more than a nominal sum. The court, RICE, P. J., refused the point, and the Supreme Court affirmed, saying: "Evidence was introduced by plaintiff below to prove that the deceased, Mrs. Jones, was his wife; that she was sixty-six years of age, and had always been a healthy woman, etc. Presuming that in the absence of any rebutting evidence, the jury might and doubtless would infer that she was an ordinarily industrious and useful wife, capable of discharging properly the duties of her position, and that consequently her death was a pecuniary loss to him, plaintiff below did not undertake to prove that she possessed any specially or exceptionally good qualities, as with propriety he might have done if the subject of his loss had been a horse or other animal. Nor was it either necessary or proper that he should do so. The court was clearly right in refusing to charge as requested." On the same principle, an infant, too young to have any earning power at the time he is injured, may be allowed by the jury compensation for the loss of earning power after he arrives at age, if his injuries are permanent: Fedorawicz v. Citizens' E. I. Co., 246 Pa. 141; and the parents of a six-year-old child may recover for his probable earnings until twenty-one years old: Hoon v. Traction Co., 204 Pa. 369; Cosgrove v. Hay, 54 Pa. Superior Ct. 175. In such case, all that the parents can show is the age and the physical and mental conditions of the child and their own circumstances in life: Hoon v. Traction Co., supra. In McCleary v. Rail-

ways Co., 47 Pa. Superior Ct. 366, the court below failed to recognize this principle, and. held that, as there was no evidence of what the pecuniary damages would be to the plaintiffs by reason of their child's death and possible earning capacity, the only damages recoverable were the doctor's bill and funeral expenses. This court reversed, and in a very clear and convincing opinion by Judge HEAD, pointed out that the "necessary difficulties in the way of producing direct evidence by the mouths of witnesses of the exact pecuniary value of a lost life are not destructive of the fundamental right to recover."

It is not necessary to hold that there must be substantial damages allowed for the negligent death of a child in every case and under all circumstances. There may possibly be exceptional circumstances which may justify a jury in holding that parents are not entitled to more than nominal damages from a defendant who has killed their child through negligence or carelessness. But those exceptional circumstances do not exist in this case. The child, when killed, was healthy, bright and intelligent, and was beginning to be useful in helping her mother, and the parents were poor people, compelled to make use of the services of their children earlier than their more well-to-do neighbors. The verdict of the jury established the culpable negligence of the defendant and that such negligence was the proximate cause of the child's death. The jury having so found, with the evidence of the child's age, good health, bright mental condition and helpful disposition before it, a verdict fixing the pecuniary value of the child's life at the amount expended for its burial is so unreasonable and disproportionate to the value of human life, that we are convinced that it must have been influenced by partiality or prejudice, or by some misconception of the law or the evidence in the case, and in our opinion, the learned judge of the court below erred in the exercise of his judicial discretion in refusing a new trial.

As the case goes back for another trial, we deem it proper to refer to the question of contributory negligence. The learned trial judge, in his charge to the jury, made a correct statement of the decisions of the Supreme Court on that subject, based upon cases where young children were killed or injured while wandering on railroad tracks, or by being struck by street railway cars, or through other perils incident to the crowded streets or life of a city. It had, however, no application to this case. Instructions to a jury, even though made up of excerpts from the opinions of the Supreme Court, may be misleading, if they are not applicable to the case being tried. The road in question was a public road in a sparsely settled country district, not crossed nor traversed by a railroad, street railway or other patent danger to pedestrians. A healthy, bright, intelligent child of nine years of age had as much right to walk on it as an adult, and to charge parents of such a child with culpable negligence for permitting it to do so, would be to convict half our rural population of negligence, for nothing is more common than to see children of that age, and even younger, trudging the country roads while going to and returning from school. To state the proposition is to refute it; for, in the absence of an unbending rule of law, what a large proportion of reasonably prudent people are accustomed to do is not negligence: Kay v. Penna. R. R. Co., 65 Pa. 269, p. 273. Furthermore, there was nothing in the evidence to show that the dead children had not acted with as much prudence as would be required from an adult, and, if so, there was no contributory negligence: 1 Shearman & Redfield's Negligence, Sec. 72. The court should have charged the jury that, if they believed the evidence as to the age and physical and mental condition of the children, their mother was not negligent in permitting them to walk on the public road to her sister's, nor was it negligence to send them on the errand upon which they went from there. While the verdict of the jury

554, (1919).]        Opinion of the Court.

established the fact that the plaintiffs were not guilty of contributory negligence, the jury may have reduced the amount to nothing but the funeral expenses with some thought of the plaintiffs' contributory negligence in mind. The trial judge thought they had. It may well be that it was this misconception of the law and the evidence which was the occasion for their unconscionable verdict.

The second assignment of error is sustained, the judgment is reversed, and a venire facias de novo is awarded.

PORTER & TREXLER, JJ. dissent.