No. 3033

Second Circuit

GEORGE v. CADDO TRANSFER AND WAREHOUSE COMPANY, INC.

(November 8, 1928. Opinion and Decree.)

Drew and Drew, of Minden, attorneys for plaintiff, appellant.

Barnette and Roberts, of Shreveport, attorneys for defendant, appellee.

## STATEMENT OF THE CASE

REYNOLDS, J. Plaintiff sues defendant to recover damages for personal injuries alleged to have been sustained by him in alighting from a motor bus operated by defendant on which he alleges he was a passenger.

Defendant denies that plaintiff was a passenger on its bus and alleges that he was a trespasser, and, in the alternative, denies negligence on its part and alleges negligence on the part of plaintiff.

On these issues the case was tried and there was judgment rejecting plaintiff's demands and dismissing his suit and he has appealed.

## OPINION

Two defenses are interposed by defendant to plaintiff's demands, namely: that he was not a passenger but a trespasser on its bus; and, in the alternative, that if he was a passenger and if it was negligent that plaintiff also was negligent and that his negligence was the sole cause or at least contributed to the accident in which he was injured and that his negligence bars recovery by him.

The view that we take of the second or alternative defense renders it unnecessary that we consider the other.

Plaintiff was riding in one of defendant's busses from Gibsland to Minden on December 20, 1925. The bus reached Minden at about seven o'clock at night.

Testifying in his own behalf the plaintiff said:

"When they got over here at Minden they stopped in the road and let a white fellow out. Johnnie (the bus porter) opened the door and let the white fellow out, and Johnnie got back in. I says 'I don't want to stop in town, can I stop over here in Warsaw, or do I have to go up in town?' He says 'Yes, he will stop anywhere.' When we got to the church, there is where I wanted to get out. They were pulling even with the hill, coming around by the school house, and he (the bus porter) pulled the cord and the bus just done that way (witness making jerking motion with his arm) just like it stopped right now. I was sitting this way and Johnnie was here and this the door that he opened. So he pulled the cord and the lights come on right now and I took my package and Johnnie got up and opened the door and stepped back and I stepped out with this foot on the running board and stepped out with this one on the ground, and that is all I know about it * * *.

"Q. What did Johnnie say when he opened the door?

"A. He never said anything * * *

"Q. Did he tell you that was your stop?

"A. He got up to give the signal to stop, and said: 'This is the place you want to get out?' And I said: 'Yes,' and he got up and pulled the cord and stepped back.

"Q. Did you think that the bus had stopped?

"A. Yes, sir; with the stop they made I thought it had stopped.
* * *

"Q. Did you hear the brakes being applied?

"A. Yes, sir; a terrible stop being put on. I know a motion for a stop.

"Q. You thought that the motor bus had stopped?

"A. Yes, sir; I thought it had stopped. **It slowed down just as though it had stopped.**" (Boldface type ours.)

David Stephens, the bus porter, testified:

"Q. Now, when you got over to Minden that night, who was the first one that said something about getting off—you or Wiley George?

"A. Wiley George.

"Q. What did Wiley George say?

"A. He says that he wanted to get off just up the hill there in front of the church.

"Q. Yes.

"A. Well, he and I were seated or sitting in the smoker. Only two seats back there. One is a long seat—

"Q. (Interrupting) Just a minute. I will let you tell that in a minute. Did he tell you where he wanted to get off?

"A. He told me where he wanted to get off.

"Q. Well, later on, did he say to you: 'Here is where I want to get off.'

"A. He says: 'Here is where I want to get off.'

"Q. When he said that, what did you do?

"A. I pulled the cord.

"Q. What did the bus do?

"A. The bus stopped—coming to a stop.

"Q. All right. What did Wiley George do?

"A. He didn't do anything. Just asked for his package.

"Q. Yes. What did he do about getting off or anything?

"A. Well, the lights come on.

"Q. What does that mean, when the lights come on?

"A. He pulls the lights on for me to get the luggage out of the back.

"Q. What did Wiley George do about getting off?

"A. Wiley George was still sitting while I got the package and when I' was over the back of the seat to get the package he goes between this junk seat—it is supposed to be eighteen inches. He comes by. I moved my feet for him to come by while I was getting the package, and when I come up with the package he had got out of the door, and I reached for him like that (witness making a reaching motion with his arm) but I was too late to catch him.

"Q. Who opened the door?

"A. He opened the door himself.

\* \* \*

"Q. From where you were sitting, could you reach the door to open it?

"A. No, sir; I could not, at that time. No, sir; I did not even see him when he got up, because I was getting his package up from the back seat.

"Q. Did he ever get hold of his package?

"A. He never did get hold of his package until I gave it to him on the outside.

"Q. When he opened the door, what happened?

"A. When he opened the door, he stepped out, and I reached for him, but I was a little late in reaching.

"Q. Did you say anything?

"A. 'Just wait a minute;' that was all I had time to say."

As stated by the District Judge, in an extensive review of the law and facts of the case, although a carrier is bound to exercise the utmost care in receiving passengers, conveying them to their destination and setting them down safely, yet there are certain acts of caution which passengers must exercise in order to free themselves of negligence. And the evidence in this case shows that plaintiff failed to exercise that degree of care the law required of him as a passenger under the circumstances, and this failure precludes· recovery by him in this action.

The plaintiff knew or by the exercise of his senses might have known that the bus had not stopped and that it was dangerous for him to attempt to alight from it.

As said by our Supreme Court in Morris vs. Illinois Cent. R. R. Co., 127 La. 445, 53 So. 698, 31 L. R. A. (N. S.) 629:

"A passenger who has every reasonable opportunity to ascertain whether a train from which he is about to alight is still in motion fails to assure himself that the

train has stopped sufficiently to permit him to alight without danger, cannot hold the railroad responsible for injuries received while getting off the moving train. The fact that the flagman fails to notify a passenger who has left the coach and is standing on the step that the train is moving and that it is dangerous to attempt to alight while the train is in motion, will not charge the company with negligence because the passenger is on the step ready to alight; does not warn the flagman that he will do so while the train is in motion and at a time when it is dangerous to do so."

What is said here about passengers on railroad trains is equally applicable to passengers on motor busses.

We have carefully read the evidence and considering the law applicable thereto was convinced that the judgment of the trail court is correct and accordingly it is affirmed.