## Bickness v. Pittsburgh Railways Company et al.

*J. Thomas Hoffman*, for plaintiff.

*J. R. McNary, E. W. Langfitt* and *Moorehead & Knox*, for defendants.

GRAY, J.—Plaintiff has a verdict for $2500 against the Pittsburgh Railways Company, and moves for a new trial on the ground that the verdict is grossly inadequate and that the trial judge erred in refusing to submit to the jury the question of future diminished earning capacity of plaintiff.

The accident occurred July 15, 1928. Plaintiff was thrown from an automobile to the street by a collision with a trolley car, and suffered a simple fracture of the pelvis toward the front of her left side. She was in a hospital until August 7, 1928, remained upstairs at her home for two weeks after returning from the hospital, and then took a trip to the country, where she remained in bed two weeks, and then was up and around the house for two weeks, after which she returned home, where she remained until her marriage on February 6, 1929. She then moved to Chicago, where she is now living with her husband. Up until a short time before the accident she was employed as core maker in a foundry, which she testified was a man's work. According to her own testimony, she had never been sick before the accident. She did not return to work after the accident. Her wedding had been set for August, 1928, but on account of the accident it was deferred until the following February. She earned about $25 per week. Plaintiff testified that since the accident everything bothers her. She complains of pain in the small of her back, her thigh and left knee; of headaches and dizziness; that her left knee gave way and caused her to fall frequently during her pregnancy; that after bending over she cannot readily straighten her back; her left knee is stiff and she cannot walk as before. She testified she has only been able to do light housework, cannot scrub or do the laundry work, and has to kneel on the floor in order to bathe her baby, since she cannot stoop over readily. After leaving the hospital, plaintiff did not consult her attending physician again, or any other physician except Doctor Jackson, who was consulted in August, 1928, and then examined her again the day of the trial, he being the expert called by plaintiff. Plaintiff did not consult a physician in Chicago until she had a miscarriage in October, 1929, at which time she had an operation called a curetment. She gave birth to a baby five weeks before the case came to trial, at which time she was badly torn from the use of forceps.

Doctor Singley attended her at the hospital. He testified that, aside from the fracture of the pelvis, plaintiff suffered only minor bruises and abrasions; that there was no serious injury to plaintiff's knee or right forearm or her back, and that there was no involvement of the pelvic organs detected and no possible development of infection in the uterus. His opinion was that eight weeks was sufficient time for a recovery from the injury to the pelvis.

Doctor Jackson testified that when he examined plaintiff on August 29, 1928, plaintiff complained of severe pain in her left knee, in the left side of her abdomen and groin and in her back; that manipulation of her left leg caused a severe pain in the left groin and also in the left knee; that he detected tenderness in her back over the right sacro-iliac joint; that her knee jerks were markedly exaggerated; that she complained of dizziness and headaches, which were constant, and of excitability, irritability, nervousness and insomnia. He gave as his opinion that all this was caused by the injury to the pelvis and the bruises from the accident. He testified that on his examination on the day of the trial there was "some slight improvement in some of her symptoms in this duration of two years and he would hope that, with her youth, she would continue to improve to some extent. But how much that improvement is going to be or how long it is going to take I don't think it is possible for anybody to answer." In answer to the question, "Would you ever expect full improvement, full restoration of her condition as before the accident?" Doctor Jackson answered, "I don't know that I can give you an opinion about that that would be worth anything. I mean it would be a guess. I could tell you what I would hope." On cross-examination, in answer to the question, "Isn't it generally known even to the layman that miscarriage and childbirth will cause very serious and prolonged pains in the womb and back?" Doctor Jackson answered, "I presume every woman knows that." In answer to the question, "That is generally known among the laity?" Doctor Jackson answered, "That is true." Doctor Caven testified that, in his opinion, the pains in plaintiff's back were due to the curetment after the miscarriage and the birth of plaintiff's child.

Plaintiff's husband is a conductor on the Chicago Surface Lines, and after his marriage and at the time of the trial was maintaining his wife in their home in Chicago, which was an apartment of four small rooms. There was no testimony that anyone had been employed in their home to assist plaintiff, the testimony being that the husband assisted in the work in the home, doing the scrubbing of floors and other hard work. Plaintiff has taken care of her baby, but with difficulty, she testified, due to the trouble with her back and knee. There is no suggestion in the testimony of any necessity or purpose of plaintiff to undertake any remunerative work outside of her home.

The trial judge refused to allow the jury to consider future diminished earning capacity of plaintiff, and this is the only error complained of. Plaintiff's right of action accrued when she was an unmarried woman, and if her status as such had continued, there would be no question of her right to have the jury consider as an element of her damages future diminished earning capacity, provided she had sustained the burden of proof upon her to supply the jury with competent testimony upon which a reasonable finding as to future diminished earning capacity could be made. Plaintiff voluntarily changed her status by her marriage, and at the time of the trial she was a married woman living with her husband in a home which he was maintaining. So far as she was able, she was performing her household and family duties, though with difficulty, according to her testimony. Presumably the marriage relation will continue. The husband is an able-bodied man, able and willing to care for his wife and child, as was evidenced from his testimony and his appearance on the witness stand, but counsel for plaintiff argues that the husband might die or become sick and incapacitated, or he might desert his wife or divorce her, and, therefore, it might become necessary some time in the future for her to earn her own living, or to help maintain herself and family, and that on account of these possibilities the

jury should have been permitted to determine whether her earning capacity outside of the home in an independent employment would be diminished in the future, and if so, to render her a verdict for her damages in this respect.

The only cases similar to the one before us which have been cited to us or which we have been able to find are Reading et ux. *v*. Penna. R. R. Co., 52 N. J. L. 264, and Booth *v*. Baltimore & Ohio R. R. Co., 77 W. Va. 100, 87 S. E. 84, both of which were cited by counsel for defendant. Apparently, there are no Pennsylvania cases in point.

In Reading et ux. *v*. Pennsylvania R. R. Co., *supra*, it was held that the marriage of a woman after receiving injuries in an accident did not affect her right to recover damages for her loss due to diminished earning capacity. The facts of this case do not appear from the report of it. It was held that the husband lost nothing by the disability of the wife, since her disability existed at the time of their marriage, and that the loss was that of the wife alone; that the fact that she had acquired a right to support by her husband did not affect the principle in question, though it might affect in a material degree the value of the thing lost. The court said that when it came to estimating the value of a corporal ability, considered solely in the light of a money-producing power, it is obvious the likelihood of its being useful, or the reverse, is a consideration of primary importance. We are of the opinion the principles of law announced by this case are correct, but we are also of the opinion the testimony in the instant case did not warrant the submission to the jury of the question of the future diminished earning capacity of the plaintiff, because plaintiff failed to sustain the burden of proof upon her to present competent evidence from which a finding of loss due to future diminished earning capacity could reasonably be made. Under the circumstances of this case, a finding of loss due to future diminished earning capacity of the plaintiff would be purely speculative. The principle applicable to the question in this case was well stated in Beck *v*. Baltimore & Ohio R. R. Co., 233 Pa. 344, in the following language:

"The rule as to the elements of damages that may be recovered in cases of this character is very well stated in Goodhart *v*. Railroad Co., 177 Pa. 1. It is important, however, in the trial of such cases to prove the facts upon which these various elements of damage are based. This burden is always upon the complaining party. Damages are never presumed; they must be proven, or at least such facts must be established as will furnish a basis for their assessment according to some definite and legal rule."

In Wilson *v*. Consolidated Dressed Beef Co., 295 Pa. 168, there was a verdict for the father for the death of a minor child, which was reduced on account of there being no proof of probable loss to the father on account of being deprived of the services of the child. Among other things, the Supreme Court said:

"We are mindful of the cases which hold that the health of the child and the situation in life of the parents may afford proof of the probable prospective earnings of a child (Loughran *v*. Thomas Bros. Co., 65 Pa. Superior Ct. 302; Hammaker *v*. Watts Twp., 71 Pa. Superior Ct. 554, 556), but here the situation of the parents is admittedly such as to negative the conclusion of any earnings. 'In a negligence case damages are never presumed; they must be proven, or at least such facts must be established as will furnish a basis for their assessment according to some definite and legal rule': Beck *v*. Balt. & Ohio R. R. Co., 233 Pa. 344, 345. There can be no recovery for items of loss not proved even in case of action for death of a child.''

These cases are not cited as ruling authorities, but as illustrative of the principle applied by the trial judge in this case. Plaintiff is living with her

husband and infant child in normal family relations, concerning which there is no suggestion at all that these relations will not continue during the lives of husband and wife. The attending physician was not asked for any opinion as to the present cause of plaintiff's debilitated condition. The expert for plaintiff called for the purpose of prognosticating the future testified that it would be a mere guess to undertake to say how long plaintiff's debility might last, when it might be ended, or to what extent it would endure in the future, and he conceded the plaintiff's experiences in a miscarriage and childbirth were such as to cause the pains of which she now complains. On this state of the testimony we are of the opinion the plaintiff did not sustain the burden of proof cast upon her to present such testimony as would reasonably warrant a finding of loss due to future diminished earning capacity as a worker outside of her home for remuneration, and while she would be entitled to have such a question submitted to the jury if there was competent proof from which damages could be assessed, there is no such testimony in this case, and, therefore, the trial judge properly refused to submit that question to the jury. The motion for a new trial must, therefore, be refused.

From William J. Aiken, Pittsburgh, Pa.